**Henson v. Benckini**

*William T. Wilson,* for plaintiff.

*Robert Allan Alpert,* for defendant.

WALLITSCH, *J.,* August 17, 1992—This case is before us on defendant's motion to strike a judgment entered against him in Lehigh County. This judgment was originally rendered in North Carolina when defendant failed to appear and a default judgment was taken. Subsequently, that judgment was transferred to this county. The issue presented is whether we are required to give full faith and credit to our sister state's judgment under the U.S. Constitution.

There is some disagreement as to the standard to be applied to this issue raising the jurisdiction of the courts of Pennsylvania to enforce the judgment of a North Carolina court. Both parties cite *Tandy Computer Leasing v. DeMarco,* 388 Pa. Super. 128, 564 A.2d 1299 (1989), but reach different conclusions. We read *Tandy* to say that we must look to the law of the forum state where the initial judgment is taken, with the U.S. Supreme Court rulings on the limitation of a forum state's ability to assert personal jurisdiction over non-residents as a check on overreaching by the forum state. Therefore, we will apply North Carolina's law on personal jurisdiction unless we find that it runs afoul of the U.S. Supreme Court's rulings on this issue.

In this case, a Pennsylvania landscaper (Benckini) saw an advertisement in a national trade magazine for a North Carolina nursery wholesaler (Henson). The course of the relationship transpired as set forth in Benckini's deposition. Benckini called Henson to request a price list. In response to this phone call Henson sent Benckini a price list of items that Henson was willing to sell. The next contact was a phone call from Benckini to Henson

regarding the placement of an order. Benckini followed this with a written list of products and size requirements. Upon receipt of this written list, Henson called Benckini to inform him that some of the requested items could not be supplied. Henson followed this conversation with a letter that listed the supplies that he could provide to Benckini. Prior to receiving the final list from Henson, Benckini sent a deposit to Henson for the supplies. Henson shipped the supplies to Benckini who was dissatisfied with the quality of the shipment and stopped payment on the deposit check. The delivery person could not take the trees at that time but said he would return within 24 hours. No one ever came back for the trees and they were eventually destroyed. This provides the factual basis from which we must determine whether North Carolina has a properly asserted personal jurisdiction over the defendant.

The North Carolina Long Arm Statute will allow the courts of North Carolina to assume in personam jurisdiction when "in any action which related to goods, documents of title or things of value shipped from this state by the plaintiff to the defendant on his order or direction." N.C. Gen. Stat. §1-75.4(5)(d).

Goods were shipped from Henson to Benckini that comprised all of the supplies Henson could ship from the listed request made by Benckini. Therefore, Henson had the right under the North Carolina Long Arm Statute to bring an action against Benckini. However, we must also determine whether the application of the North Carolina Long Arm Statute is consistent with due process under the circumstances of this case.

The North Carolina Supreme Court dealt with this issue in the case of *Tom Togs Inc. v. Ben Elias Industries*

*Corp.,* 318 N.C. 361, 348 S.E.2d 782 (1986). The court in that case said:

"Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this state, nevertheless, a single contact may be a sufficient basis for the exercise of in personam jurisdiction if it has a substantial connection with this state. See *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478-79, 105 S.Ct. 2174, 2185-86, 85 L.Ed.2d 528, 545; *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Goldman v. Parkland,* 277 N.C. 223, 176 S.E.2d 784." *Id.* at 367, 348 S.E.2d at 786. (emphasis in original)

In the case at bar we have a single contact between the defendant and the state of North Carolina and we must determine whether that single contact has a "substantial connection" with North Carolina such that in personam jurisdiction is established.

In the *Tom Togs* case, *supra,* the single contact was a one time only contract between Tom Togs and Ben Elias Industries. However, unlike our case, the single "contact" in *Tom Togs* involved numerous transactions which took place in North Carolina. The contract was formed in North Carolina, the out-of-state defendant sent personal labels to North Carolina, and substantial performance of the contract was to be in North Carolina. *Id.* at 367, 348 S.E.2d at 786-87. The case of *Watson v. Graf Bae Farm Inc.,* 99 N.C. App. 210, 392 S.E.2d 651 (1990), is also a single contact case involving a one-time-only contract where substantial activity on the contract took place in North Carolina. In the *Watson* case,

the out-of-state defendant put an ad in a national magazine which was answered by the North Carolina plaintiff, a horse that was the object of the sale was to be examined by a vet in North Carolina, and the horse was delivered to North Carolina. *Id.* at 653, 392 S.E.2d at 653. The court in *Watson* held that even though this was a once-and-done arrangement between the parties, a substantial part of the arrangement was performed in North Carolina, giving the state jurisdiction over the defendant. Finally, in *Mony Credit Corp. v. Ultra-Funding Corp.,* 100 N.C. App. 646, 397 S.E.2d 757 (1990), the fact that the North Carolina plaintiff was to retain all right, title and interest in lease equipment that was the subject of the contract, that rent was to be paid in North Carolina, and that the equipment remained in North Carolina, was the basis for the court's finding of sufficient minimum contacts to assert personal jurisdiction over the defendant.

The distinguishing factor between our case and those cited above is the amount of activity on the contract which occurred in North Carolina. The contract was formed in Pennsylvania when Benckini accepted Henson's counteroffer. The supplies were shipped to Pennsylvania and final payment was to be made in Pennsylvania. Delivery and payment were the final acts to be performed by both parties and they were to take place in Pennsylvania. There is nothing about this contract that would suggest a continuing relationship as those found in *Burger King, supra* and *McGee, supra.* The formation, performance and breach of this "once-and-done" contractual relationship all took place in Pennsylvania. Therefore, it would have offended the notions of fair play and substantial justice to have required Benckini to defend this case in North Carolina. Thus, Benckini was not afforded due process

in the North Carolina case whose judgment plaintiff is now seeking to have enforced in Pennsylvania. Under these circumstances, full faith and credit need not be given the foreign judgment and defendant's petition to strike that judgment in this Commonwealth is granted. Plaintiff is free to proceed against the defendant for the alleged breach of a contract that was formed in Pennsylvania and whose substantial performance was to take place in Pennsylvania in Pennsylvania's courts.

## ORDER

Now, August 17, 1992, upon consideration of written briefs and oral arguments of counsel and for the reasons expressed in the accompanying opinion it is ordered that the defendant's petition to vacate judgment is hereby granted.