JOHN D. TUTTERROW AND GLOBAL INTERNATIONAL, INC., PLAINTIFF-APPELLEE v. RONALD MANSFIELD LEACH, HERBERT J. ABEDON, FIDELITY NATIONAL TRUST, AND FIRST FIDELITY REVENUE TRUST, LTD., DEFENDANT-APPELLANT

No. 9110DC476

(Filed 20 October 1992)

**Process § 9.1 (NCI3d) — out of state defendants — lack of personal jurisdiction**

The trial court erred by denying defendants' motion to dismiss under N.C.G.S. § 1A-1, Rule 12(b)(2) based on lack of personal jurisdiction where plaintiffs brought an action for breach of contract, fraud, and unfair and deceptive trade practices based upon defendants' alleged failure to issue a performance bond after plaintiff had paid a $5,000 fee for that purpose. It could not be discerned from the record where the performance bond was to be delivered, so that jurisdiction does not

follow under the long-arm statute. The contacts between defendants and North Carolina were insufficient to fulfill the necessary due process requirements in that defendants never solicited their business within North Carolina; the contract was created over the telephone and was later memorialized when plaintiff Tutterrow drafted a letter and sent it to defendant Leach in Rhode Island; the only contacts between the parties other than telephone conversations consisted of a handful of letters; none of the letters indicated that the performance bond would be delivered by defendants to plaintiffs in North Carolina; the agreement provided that defendants would perform acts outside North Carolina; any services actually rendered by defendants were performed in Rhode Island; and defendants' affidavits indicate no other business dealings or activities in relation to North Carolina prior to the contract with plaintiffs. A finding of *in personam* jurisdiction would clearly violate defendants' due process rights. N.C.G.S. § 1-75.4.

**Am Jur 2d, Process §§ 175, 186-191.**

**Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on making or performing a contract within the state. 23 ALR3d 551.**

APPEAL by defendants from order entered 7 February 1991 by *Judge James R. Fullwood* in WAKE County District Court. Heard in the Court of Appeals 12 March 1992.

*David H. Rogers for plaintiff appellees.*

*Futrell, Hunter & Knutson, by Archie W. Futrell III, for defendant appellants.*

COZORT, Judge.

Plaintiffs brought an action against defendants alleging breach of contract, fraud, and unfair and deceptive trade practices. Defendants made a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) (1990), based on lack of personal jurisdiction. The trial court denied the motion to dismiss, and defendants now appeal. We reverse.

Plaintiff John D. Tutterrow is the president and chief executive officer of plaintiff Global International, Inc. ("Global"), a Nevada

corporation with its principal place of business in Wake County, North Carolina. In the spring of 1990, Mr. Tutterrow learned about an open request for bids for the construction of a desalinization plant in Abu Dhabi. Mr. Tutterrow made a written request for information about the bid, but after reviewing the material, he believed he could not qualify for the project. Subsequently, while on a business trip, Tutterrow became acquainted with Olu Olayemi. Tutterrow and Olayemi discussed international business, and Tutterrow expressed his disappointment at being unable to bid on the Abu Dhabi project. Mr. Olayemi informed Tutterrow that he represented an investment banking firm in Rhode Island which could help solve Tutterrow's problems. Olayemi told Tutterrow to contact defendant Ronald Mansfield Leach in Rhode Island. Tutterrow thereafter consulted Mr. Leach by telephone and the two discussed how Leach's companies, Fidelity National Trust ("Fidelity"), and First Fidelity Revenue Trust Ltd. ("First Fidelity"), could help Tutterrow secure a performance bond necessary for the construction bid.

On 15 May 1990, Tutterrow and Leach entered into an oral contract by telephone which was memorialized later the same day in a letter sent from Tutterrow by facsimile to Leach in Rhode Island. The parties agreed that a certificate of deposit would be used as security to obtain a performance completion bond which would be sent to Abu Dhabi. The letter stated in pertinent part:

> It is agreed that Global will send $5,000 USD to Fidelity National Trust's attorney Herbert J. Abedon, Esq. as fees. It is agreed that Fidelity National Trust/Mr. R. Leach will use a 15 Million USD certificate of deposit as an instrument to show Global's net worth as such in order to place a 15 Million USD Construction Completion Bond (Performance Bond) to Gulf Utilities of Abu Dhabi from a rated bonding company acceptable to the Abu Dhabi Government.

> It is agreed that Fidelity National Trust will cause a Letter of Intent from this Rated Bonding Company to be faxed to Gulf Utilities within 36 hours of receipt of the $5,000 fee showing evidence that a 15 Million USD Performance Bond will follow in a timely manner.

One of Tutterrow's business associates, an Illinois resident, sent a check drawn on a California bank to defendant Abedon. When no performance bond was ever obtained, plaintiffs filed an

action against defendants alleging breach of contract, fraud, and unfair and deceptive trade practices. Plaintiffs sued for damages in the amount of $5,000.00, plus lost profits and attorney's fees. Defendants moved for dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2) (1990), based on lack of personal jurisdiction, and filed affidavits in support. The trial court made finding of fact and conclusions of law and entered an order holding that personal jurisdiction was conferred over all the defendants pursuant to N.C. Gen. Stat. § 1-75.4 (1983). Defendants argue on appeal that the evidence before the trial court failed to establish *in personam* jurisdiction pursuant to N.C. Gen. Stat. § 1-75.4, and the exercise of jurisdiction violates due process of law. We agree that the trial court erred.

The jurisdictional issue in this case involves a two-part analysis. First, we must determine whether N.C. Gen. Stat. § 1-75.4, North Carolina's "long arm" statute, confers *in personam* jurisdiction over the defendants. We then must decide whether the exercise of such jurisdiction would violate due process of law. *Mony Credit Corp. v. Ultra-Funding Corp.*, 100 N.C. App. 646, 648, 397 S.E.2d 757, 758 (1990). The crucial inquiry and the ultimate determinative factor in assessing whether jurisdiction may be asserted under the long-arm statute is due process. *Phoenix America Corp. v. Brissey*, 46 N.C. App. 527, 530, 265 S.E.2d 476, 479 (1980).

In the case below, the trial court did not indicate which subsection of the long-arm statute conferred jurisdiction over the defendants. Plaintiffs contend several subsections of the long-arm statute apply in this case. A review of the subsections, in conjunction with the evidence presented in the record, discloses that only two provisions, N.C. Gen. Stat. §§ 1-75.4(5)(1) and (5)(c), have the potential for establishing jurisdiction. N.C. Gen. Stat. § 1-75.4 provides in part:

> A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:
>
> * * * *
>
> (5) Local Services, Goods or Contracts.—In any action which:
>
>> a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the

TUTTERROW v. LEACH

[107 N.C. App. 703 (1992)]

defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or

* * * *

c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; . . .

The provisions of N.C. Gen. Stat. § 1-75.4 are to be liberally construed in favor of finding personal jurisdiction subject only to due process considerations. *Munchak Corp. v. Riko Enter., Inc.*, 368 F. Supp. 1366, 1371 (M.D.N.C. 1973). Accordingly, if the evidence supports a finding which comports with one of the above provisions, jurisdiction will follow under the long-arm statute. The trial court's order included the following finding of fact:

The aforesaid construction performance bond, or a suitable documentation and evidence of it, was intended by the parties to be delivered by the Defendants or their agents to the Plaintiffs, for use by the Plaintiffs in and from their principal places of business in North Carolina.

Defendants dispute this finding by arguing that no evidence exists in the record to show the parties intended the bond to be delivered to North Carolina. We have reviewed the record carefully and cannot discern where the performance bond was to be delivered. Neither plaintiffs' complaint nor any of the correspondence between the parties indicates the bond was to be sent to North Carolina. However, as in *Modern Globe, Inc. v. Spellman*, 45 N.C. App. 618, 263 S.E.2d 859, *disc. review denied*, 300 N.C. 373, 267 S.E.2d 677 (1980), we do not need to determine whether the contract is in accord with either N.C. Gen. Stat. §§ 1-75.4(5)(a) or (5)(c), "since we hold that even if the statute is satisfied here, due process is not." *Modern Globe*, 45 N.C. App. at 623, 263 S.E.2d at 863.

To determine whether due process has been violated by a particular grant of jurisdiction, we apply the standard set out in *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95 (1945): a defendant must have certain minimum contacts with our state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 90 L.Ed. at 102. Our Supreme Court, in *Chadbourn, Inc. v. Katz*,

285 N.C. 700, 208 S.E.2d 676 (1974), emphasized that despite the liberal trend toward exercising personal jurisdiction over nonresident defendants, minimum contacts between the defendant and the forum state are absolutely necessary for our state to invoke jurisdiction. The Court explained:

> Application of the "minimum contacts" rule "will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

*Id.*, at 705, 208 S.E.2d at 679 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L.Ed.2d 1283, 1298 (1958)). Whether the activity of the defendant adequately satisfies due process depends upon the facts of each case. *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 96 L.Ed. 485, 492 (1952). Factors to be considered when undertaking to analyze whether minimum contacts are present include the quantity of the contacts, the nature and quality of the contacts, and the source and connection of the cause of action with those contacts. *Phoenix America*, 46 N.C. App. at 531, 265 S.E.2d at 479. The analysis also requires the Court to weigh and to consider the interests of and fairness to both the plaintiff and the defendant. The touchstone remains, however, that the defendant must have engaged in purposeful activity within our state by which he or she may be said to have invoked the benefits and protections of the law of our state. *Farmer v. Ferris*, 260 N.C. 619, 625, 133 S.E.2d 492, 497 (1963).

It is undisputed that an isolated contract may be the basis for the exercise of personal jurisdiction over a nonresident defendant. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 2 L.Ed.2d 223, 226 (1957). Clearly, when the contract is to be performed in North Carolina and has a substantial connection to our state, jurisdiction is proper. *Staley v. Homeland, Inc.*, 368 F. Supp. 1344, 1350 (E.D.N.C. 1974). The mere act, however, of entering into a contract with a resident of a forum state will not provide sufficient minimum contacts with that forum. *Phoenix America*, 46 N.C. App. at 532, 265 S.E.2d at 480. For example, in *Modern Globe*, this Court found neither the contract nor the defendant's activities surrounding the contractual relationship to provide satisfactory minimum contacts to meet the requirements of due process.

## TUTTERROW v. LEACH

[107 N.C. App. 703 (1992)]

The following factors gave rise to that decision: the contract was entered into outside of North Carolina; the contract was governed by the law of another state; there was no provision in the contract requiring defendant to perform services in North Carolina; any services performed were performed outside of North Carolina; and defendant had never been to North Carolina for any purpose.

For reasons similar to those articulated in *Modern Globe*, we find the contacts between defendants and North Carolina to be insufficient to fulfill the necessary due process requirements. The record reflects that defendants never solicited their business within North Carolina; in fact, plaintiff Tutterrow was the first to initiate any contact with defendants. Defendant Leach stated in a letter written to plaintiff Tutterrow prior to the institution of this action, "[Y]ou were referred by Mr. Olayemi, we did not solicit any business from you," and, "I accepted this request primarily because of a business relationship with Mr. Olayemi." The contract was created over the telephone and was later memorialized when plaintiff Tutterrow drafted a letter and sent it to defendant Leach in Rhode Island. The only contacts between the parties other than telephone conversations consisted of a handful of letters. None of the letters indicated the performance bond would be delivered by defendants to plaintiffs in North Carolina. Rather, the agreement provided that defendants would "place a [performance bond] to Gulf Utilities of Abu Dhabi from a rated bonding company acceptable to the Abu Dhabi Government," acts clearly to be performed outside of North Carolina. Any services actually rendered by defendants were performed at Fidelity National's offices in Rhode Island. Furthermore, defendants' affidavits indicate no other business dealings or activities in relation to North Carolina prior to the contract with plaintiffs. Defendant Abedon's only connection to the contract was the receipt of the $5,000.00 check sent by plaintiffs from Illinois and drawn on a California bank.

A finding of *in personam* jurisdiction in the case at bar would clearly violate defendants' due process rights. We therefore reverse the trial court and remand the cause to the district court for an entry of an order dismissing plaintiffs' complaint.

Reversed and remanded.

Judges JOHNSON and GREENE concur.